CHESTER A. POLING, Inc., v. CITY OF NEW YORK.

No. 15618.

District Court, E. D. New York.

Oct. 25, 1939.

Alexander, Ash & Jones, of New York City (Edward Ash, of New York City, of counsel), for libellant.

William C. Chanler, Corp. Counsel, of New York City (George S. Franklin, of New York City, of counsel), for respondent.

GALSTON, District Judge.

The facts in this case are undisputed.

The libellant seeks to recover damages alleged to have resulted from respondent's delay in opening the Pelham Bascule Bridge. This bridge opens vertically in mid-stream by the raising of two leaves, one leaf pivoted on the New York side and the other on the Westchester side of the river.

It appears that on September 30, 1938, at about 2:30 P. M., the bridge operator, after allowing a boat to go through, closed the bridge and heard an unusual noise which led him to believe that trouble had occurred in the operation. On inspection he found that some of the bearing bolts and the trunnion shaft had been broken. The gates were immediately closed to road traffic and the operator reported the trouble to the Bridge Department of the City and to the Police Department. Within a half hour a machinist arrived. The libellant conceded at the trial that it made no claim that after the break the respondent delayed in effecting repairs and opening the bridge to traffic.

Accordingly but one question remains for decision. Was the bridge a proper structure and in suitable condition for operation?

A federal statute, Title 33, U.S.C., Sec. 494, 33 U.S.C.A. § 494, provides that if a bridge over navigable water be constructed with a draw, "then the draw shall be opened promptly by the persons owning or operating such bridge upon reasonable signal for the passage of boats and other water craft." See Clement v. Metropolitan Ry. Co., 7 Cir., 123 F. 271.

What negligence if any is disclosed by the record in this case? There is no contention that the design of the bridge was faulty. It was constructed by the American Bridge Company in 1908 and had been in operation prior to the time of the occurrence in suit for a period of thirty years. During that time it apparently functioned properly, for it was opened and closed between 4000 and 5000 times annually. In 1937 there were 4500 openings; in 1938, 4100. There never had been any break in the shafts. No troubles developed except those of a minor nature due to enlarged key-ways through the operation of the machinery, or to the hammering of the cranks on the keys and key-ways; that is to say just such as result from ordinary wear and tear. The bolts also had been in use since 1912. The record shows that there were periodic inspections made to determine whether the machinery was in proper condition. None of the three engineers called by the city attempted to explain how the accident happened nor whether the shaft or the bolts broke first. It is difficult to say what the respondent could have done that it failed to do in respect to the construction, care, maintenance and operation of this structure. The case is not unlike in principle that considered by Judge Byers in Newtown Creek Towing Co. v. City of New York, D.C., 49 F.2d 475.

The libel will be dismissed.

If this opinion is not in sufficient compliance with the rule requiring findings of fact and conclusions of law, submit findings of fact and conclusions of law in accordance therewith.